UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

BERNABE ENCARNACION,

                Petitioner,

      v.

MICHAEL MCGINNIS, Superintendent of
Southport Correctional Facility,

              Respondent.

───────────────────────────────────────

**REPORT AND
RECOMMENDATION**

01-CV-586
(GLS/VEB)

## I. INTRODUCTION

Petitioner Bernabe Encarnacion, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Southport Correctional Facility. In 1998, he was convicted in a New York State court of Murder in the Second Degree and Promoting Prison Contraband in the First Degree and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 48).

## II. BACKGROUND

### A.    Facts

The following factual summary is derived from the state court records.

On August 10, 1996, Daniel Roberts, an inmate in the Auburn Correctional Facility, was fatally injured during a prison yard fight with Petitioner, who was serving a twenty-five year to life sentence after being convicted of Criminal Sale of a Controlled Substance in the First Degree in 1990. (T[1] at 60-61, 94, 264; S[2] at 5-6).  The fight was witnessed by several other inmates and corrections officers.  There was no dispute regarding the fact that Petitioner was the only person fighting with the victim, who died from severe stab wounds shortly after the conclusion of the fight.

A Cayuga County Grand Jury returned Indictment Number 97-078, charging Petitioner with Murder in the Second Degree, in violation of New York Penal Law ("NYPL") §125.25(1);[3] and Promoting Prison Contraband in the First Degree, in violation of NYPL § 205.25(2).

**B.      State Trial Court Proceedings**

The Honorable Robert A. Contiguglia, Cayuga County Court Judge, presided over Petitioner's trial proceedings.  Petitioner was represented at trial by Douglas Bates, Esq. The trial commenced on February 9, 1998.  On February 17, 1998  the jury found Petitioner guilty of both the murder and promoting prison contraband charges.  (T at 565).

On March 31, 1998, Petitioner was sentenced as a second felony offender to an indeterminate term of twenty-five (25) years to life in prison for his murder conviction and three and half (3 ½) to seven (7) years for the prison contraband conviction.  (S at 6-7).

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial proceedings.

[2]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

[3]Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

Petitioner's sentences were to run concurrently to each other and to run consecutively to the sentence he was presently serving.   (Id.)

**C.     State Appellate Proceedings**

Petitioner, represented by James Leone, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  On appeal, Petitioner asserted the following two points: (1) that the conviction was against the weight of the evidence, and (2) that he was denied a fair trial because of prejudicial comments made by the prosecutor.  Petitioner also submitted a *pro se* supplemental brief asserting two additional claims: (3) that the prosecutor used false statements and evidence to secure his conviction, and (4) that he was denied effective assistance of trial counsel.

In a decision issued on February 16, 2000, the Appellate Division, Fourth Department, affirmed Petitioner's conviction.  People v. Encarnacion, 269 A.D.2d 779, 703 N.Y.S.2d 412 (4th Dep't 2000).     Petitioner's application for leave to appeal to the Court of Appeals was denied on March 28, 2000.  People v. Encarnacion, 94 N.Y.2d 918 (2000).  Petitioner sought leave to renew his appeal from both the Appellate Division and the Court of Appeals.  His applications were denied on November 13, 2000 and December 21, 2000 respectively.

Thereafter, on December 8, 2000, Petitioner filed a petition with the Appellate Division, Fourth Department for a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel.  The Fourth Department denied this petition on February 7, 2001.  People v. Encarnacion, 280 A.D.2d 1011.

In February of 2001, Petitioner filed a motion to vacate judgment pursuant to C.P.L.

§ 440.10 and §440.30.  Petitioner alleged that he uncovered new evidence and asked for DNA testing of the blood on his and the victim's clothing.  On March 13, 2001, Judge Contiguglia denied his motion.  Petitioner appealed that denial to the Fourth Department. The Fourth Department denied that motion on July 25, 2001.

## D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on April 20, 2001, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1). Petitioner asserted five grounds in support of his Petition: (1) insufficiency of the evidence; (2) prosecutorial misconduct related to closing argument; (3) violation of due process rights; (4) ineffective assistance of trial counsel; and (5) ineffective assistance of appellate counsel. (Docket No. 1).

On September 30, 2002, Petitioner attempted to amend his petition in a court filing, however, the attempt was denied due to Petitioner's failure to attach a proposed amended petition to the motion.  (Docket No. 14).  Petitioner then made three (3) additional attempts to amend his petition, which were again denied because he failed to attach a proposed amended petition.  (Docket Nos. 15, 16, 19).

Thereafter, Petitioner made a motion to stay his habeas proceedings while he pursued a writ of error *coram nobis* in the state courts.  This motion was granted and these proceedings were stayed from September of 2004 through December of 2004.  (Docket Nos. 22, 27).

Thereafter, Petitioner made three (3) formal motions to amend his petition on June

17, 2005, January 5, 2006, and May 17, 2006. (Docket Nos. 29, 33, 38). On each of those three occasions, Petitioner's motion to amend was denied by the Honorable George H. Lowe, United States Magistrate Judge, due to Petitioner's failure to attach a proposed amended petition. (Docket Nos. 32, 37, 42). Presently before this Court is Petitioner's fourth motion to amend his petition.[4] For the first time, Petitioner has included a proposed amended petition. (Docket No. 53). Respondent submitted his opposition to Petitioner's proposed amended petition on September 10, 2007. (Docket No. 54). Thereafter, Petitioner filed his reply to Respondent's opposition on October 11, 2007. (Docket No. 57).

For the reasons that follow, the Court recommends that the original Petition for habeas relief and Petitioner's Motion to Amend/Correct the Petition be DENIED.

### III. DISCUSSION

#### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted). The Second

---

[4]As discussed above, the pending motion represents Petitioner's eighth attempt to amend his Petition.

Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

6

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims in Support of Original Petition**

As set forth above, Petitioner asserts five (5) claims in support of his original petition for habeas corpus relief. Each of the five claims will be addressed in turn.

**1.    Sufficiency of the Evidence**

Petitioner challenges the constitutional sufficiency of the evidence against him.[5] A

---

[5]Petitioner also references the fact that the jury's verdict was allegedly against the weight of the evidence. Although this Court will discuss and analyze the sufficiency of the evidence claim, Petitioner's weight of the evidence claim is not cognizable on federal habeas review and must be dismissed. See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), aff'd, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (same); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (same); Garbez v. Greiner, No. 01 Civ. 9865, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002).

habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).

A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In the present case, Petitioner argues that there was no blood or fingerprint evidence to support his conviction.  As noted above, Petitioner's conviction was for Murder in the Second Degree and Promoting Prison Contraband in the First Degree.  The legal sufficiency of the evidence supporting each count will be addressed in turn.

###### a.    Murder

The jury convicted Petitioner of Murder in the Second Degree.  The Appellate

Division rejected Petitioner's contention that the verdict with respect to this charge was against the weight of the evidence. Encarnacion, 269 A.D.2d at 779.

Under the New York Penal Law, "[a] person is guilty of murder in the second degree when with intent to cause the death of another person, he causes the death of such person or of a third person." N.Y.P.L. § 125.25(1).  At trial, the prosecution presented testimony from corrections officers who observed Petitioner fighting with the victim, and Petitioner admitted that he alone was the person fighting with the victim.  (T at 439, 447, 449, 60-61, 94, 150-151, 160).  There was also testimony from a corrections officer who observed an ice-pick type weapon fly from behind the inmates and land on the ground. (T at 64, 84-85).  The medical testimony established that the victim died from stab wounds.  (T at 264).  It was further established that the rounded ice-pick type weapon recovered was consistent with the weapon that caused the victim's stab wounds. (T at 264-265).  The medical testimony also revealed that a great deal of force was necessary to cause the victim's injuries.  (T at 266).

With respect to Petitioner's argument that there was no blood from the victim found on his clothing or on the weapon, the medical evidence established that because of the specific nature of the injury, there may not have been any blood on the instrument or on the perpetrator.[6]  (T at 267 -268).  Moreover, the medical evidence established that the victim would have been unable to function with such a wound for more than thirty seconds to a minute.  (T at 269).

---

[6]According to the medical testimony, because the skin is very elastic, when a weapon divides the skin, the elasticity will hold the skin close to the weapon. Therefore, when the weapon is withdrawn, "[t]here may be some wipeage" of the blood or other material off of the weapon.  (T at 267).

Based upon the medical testimony, standing alone, any rational trier of fact could have concluded that the stabbing occurred during the fight and that Petitioner, as the lone person fighting with the victim, intentionally caused the victim's death.   Additionally, the force used to cause the victim's injuries indicates the intent to cause those injuries.

Petitioner's assertions that the lack of blood or fingerprint evidence establishes the insufficiency of the evidence to support the verdict are unavailing.  See Padro v. Strack, 169 F. Supp. 2d 177, 180 (S.D.N.Y. 2001) (finding that evidence was sufficient to support conviction even though forensic evidence was "inconclusive" as to petitioner's indentity).

In sum, viewing the evidence in the light most favorable to the prosecution, Petitioner has failed to establish that no rational trier of fact could have found him guilty beyond a reasonable doubt. Ponnapula, 297 F.3d at 179; see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues).

### b.    Promoting Prison Contraband

Petitioner was also convicted of Promoting Prison Contraband in the First Degree. The prison contraband referred to in this charge was the ice pick type weapon used in the murder. Under the New York Penal Law, "[a] person is guilty of promoting prison contraband in the first degree when . . . [b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any dangerous contraband." N.Y.P.L. § 205.25(2).

As set forth above, the prosecution established through medical evidence that the

victim died from stab wounds.  (T at 264).  Petitioner admitted that he was the only person fighting with the victim. (T at 439, 447, 449).  Further, a corrections officer testified to observing an ice-pick type weapon, which was later recovered, fly from the area of the fight. (T at 64, 84-85).  After the fight, the victim collapsed and died, apparently of wounds inflicted by the ice-pick.  Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Petitioner was the individual who wielded (and thus possessed) that weapon and that the weapon was dangerous. Ponnapula, 297 F.3d at 179.

For the foregoing reasons, this Court finds that Petitioner is not entitled to relief based upon his sufficiency of the evidence claim and it should be DISMISSED.

### 2.        Prosecutorial Misconduct

In his second claim for relief, Petitioner alleges that the prosecution made an improper statement during summation.  Specifically, Petitioner objects to the following statement made by the prosecutor: "[t]ell this Defendant with your verdict that this is not acceptable; that he did not have the right to be Daniel Roberts' judge, jury, or executioner." (T at 501).  Respondent argues that this claim is procedurally defaulted.

#### a.        Procedural Bar

When addressing this claim on direct appeal, the Appellate Division Fourth Department found that this was "not preserved for [their] review ( see, CPL 470.05[2] ), and [they] decline[d] to exercise [their] power to review that contention as a matter of discretion in the interest of justice ( see, CPL 470.15[6][a] )."  The Appellate Division's

ruling in this regard was based upon section 470.05 (2) of the New York Criminal Procedure Law, which is commonly known as the "contemporaneous objection" rule.

"Where the highest state court that rendered a judgment in the case 'clearly and expressly states that its judgment rests on a state procedural bar,' such procedural default constitutes independent and adequate state grounds to deny habeas relief." Corney v. Henri, 05-CV-338, 2007 WL 1388118, at *5 (N.D.N.Y. May 9, 2007) (quoting Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).  In such cases, a federal court is generally barred from reviewing the petitioner's claims.

The Second Circuit has held that New York's contemporaneous objection rule is an "adequate and independent" state ground for procedural default in cases where defense counsel has failed to object. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir.1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir.1999); Murray v. Carrier, 477 U .S. at 485-92, 106 S.Ct. 2639.

A petitioner may obtain habeas review of an otherwise procedurally defaulted claim only if he can show "cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Id., 489 U.S. at 262, 109 S.Ct. 1038 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir.2000). In order to show a "fundamental miscarriage of justice," Harris, 489 U.S. at 262, 109 S.Ct. 1038, a petitioner must demonstrate "actual innocence." Calderon v. Thompson, 523 U.S.

12

538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); accord Washington v. James, 996 F.2d 1442, 1447 (2d Cir.1993), cert. denied, 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994).

It is undisputed that Petitioner's trial counsel did not object to this statement. As such, due to the fact that there was no contemporaneous objection made to the statement in question, the prosecutorial misconduct claim is procedurally barred.

Having found that the state has clearly and expressly stated that its judgment rested on an adequate and independent state procedural bar, namely, the contemporaneous objection rule, this Court is precluded from reviewing the claim unless the petitioner demonstrates both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. St. Helen v. Senkowski, 374 F.3d 181, 184 (2d Cir.2004) ("In the case of procedural default ... [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.' ") (quoting Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998))

Petitioner suggests that the procedural bar should be excused based upon ineffective assistance of counsel.  Specifically, Petitioner argues that his trial counsel failed to object to the statement in question because he was angry with Petitioner for a physical altercation that occurred during the summation.[7]  However, a review of the transcript

---

[7]During Petitioner's trial counsel's closing statement, Petitioner stood up, picked up a chair, walked towards his attorney and struck him with the chair.  Petitioner was wrestled to the ground and subdued.  His attorney was not seriously injured and thereafter continued on with the closing statement. (T at 470).

13

reveals that even after this altercation, Attorney Bates continued to vigorously represent Petitioner.  Mr. Bates even spoke in defense of his client's actions to the trial court, suggesting that a language barrier was the cause of the altercation.  (T at 476).

Therefore, Petitioner has not alleged any facts that would constitute cause for default.  In addition, for the reasons discussed below, Petitioner has not demonstrated that he has suffered " 'actual prejudice' resulting from the alleged error" of his counsel in failing to object to the statement in question.  Bousley v. United States, 523 U.S. 614, 630, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting United States v. Frady, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 1594-1595, 71 L.Ed.2d 816 (1982)).

Finally, Petitioner has not come forward with any "new evidence" to support a claim that he is "actually innocent" of the charges on which he was convicted, as required to establish that denial of the claim as procedurally barred would result in a fundamental miscarriage of justice.  See Schlup v. Delo, 513 U.S. at 327, 115 S.Ct. 851.  Accordingly, the procedural default bars federal review of Petitioner's claims challenging the prosecutor's summation comment and it should be DISMISSED.

### b.   Merits of Prosecutorial Misconduct Claim

Even assuming *arguendo* that Petitioner's claim is not procedurally barred or that the procedural bar could be excused, the claim itself is without merit.

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. "[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003); see also Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of

habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

The Supreme Court accordingly has instructed federal habeas courts reviewing claims of prosecutorial misconduct brought by state petitioners to distinguish between "ordinary trial error of a prosecutor and that sort of egregious misconduct ... amount[ing] to a denial of constitutional due process." Donnelly v. DeChristoforo,  416 U.S. 637, 647-48, 94 S.Ct. 1868 (1974) (citations omitted); accord Floyd, 907 F.2d at 353.

Donnelly' s standard requires the federal habeas court to ask whether " 'the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.' " Floyd, 907 F.2d at 353 (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir.1986)) (citing Donnelly, 416 U.S. at 645 and, inter alia, United States v. Modica, 663 F.2d 1173 (2d Cir.1981), cert. denied, 456 U.S. 989 (1982)); see also Garofolo, 804 F .2d at 206 (noting that harmless error doctrine may be applicable to prosecutorial misconduct involving statements to the jury) (citing United States v. Hasting, 461 U.S. 499, 510-12 (1983)).

Given the narrow scope of habeas review of prosecutorial misconduct claims, a habeas petitioner must show "that he suffered actual prejudice because the prosecutor's comments had a substantial and injurious effect or influence in determining the jury's verdict." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998) (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)).

In making the determination of whether a defendant has suffered "actual prejudice" as a result of the prosecutorial misconduct, the Second Circuit has examined " 'the

severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.' " Tankleff, 135 F.3d at 252 (quoting Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d at 1181) (internal quotation marks omitted); citing United States v. Parker, 903 F.2d 91, 98 (2d Cir.1990)).

As set forth above, Petitioner asserts that the prosecutor's statement: "[t]ell this Defendant with your verdict that this is not acceptable; that he did not have the right to be Daniel Roberts' judge, jury, or executioner" was misconduct depriving him of a fair trial. (T at 501).[8]

"Statements made by prosecutors in their summation, even if seemingly improper, do not necessarily exceed 'the broad range of rhetorical comments allowed in closing arguments.'" Jones v. Keane, 250 F.Supp.2d 217, 237 (W.D.N.Y. 2002) (quoting Harper v. Kelly, 704 F.Supp. 375, 379 (S.D.N.Y.1989), rev'd on other grounds, 916 F.2d 54 (2d Cir 1990) and citing Donnelly, 416 U.S. at 646-47 (isolated passages of a prosecutor's argument, even if imperfect, do not suggest that a jury will be so profoundly affected so as to affect the fundamental fairness of a trial)).

Although the statement was question was perhaps intemperate, considering the evidence as a whole, the statement in question fell within "broad range of rhetorical comments allowed in closing arguments." Jones, 250 F. Supp. at 237.

Moreover, even if this Court assumes that the prosecutor's statement was

---

[8]Petitioner also makes brief mention that "the prosecutor told the jury that the blood found on Petitioner's clothing is deceased [sic] blood (T.P. 500)."  However, a review of the transcript reveals that the prosecutor actually said: ". . .the Defendant didn't have a single cut, stab wound or injury and yet he had blood on his jacket, his pants and his boots."  (T at 500).  In stating this, the prosecutor did not misstate evidence and therefore this is not even arguable prosecutorial misconduct.

improper, Petitioner has failed to show resulting prejudice from the brief and isolated remark. See United States v. Mitchell, 328 F.3d 77, 84 (2d Cir. 2003) (prosecutor's comments, even if improper, were "not prejudicial in view of the fact that they were brief and isolated and in light of the substantial evidence of guilt adduced by the government").

Indeed, the certainty of Petitioner's conviction absent the prosecutor's statements precludes any argument of actual prejudice.   As set forth above, based on the overwhelming evidence of Petitioner's guilt, any rational trier of fact would have found Petitioner guilty of the crimes charged. See Collins v. Artus, 496 F. Supp.2d 305, 319 (S.D.N.Y. 2007) (petitioner was not entitled to relief even though summation statements were improper, due to overwhelming evidence of guilt).

Accordingly, assuming for purposes of argument that Petitioner's prosecutorial misconduct claim was not procedurally barred, it is without merit and should be DISMISSED.

### 3.      Presentation of False Evidence

In Petitioner's third ground for habeas relief, Petitioner claims that the trial court deprived  him of his right to a fair trial by allowing the prosecution to use false evidence to secure his conviction.

Specifically, Petitioner argues that the prosecutor's assertion that an ice-pick type weapon was the murder weapon was false because no blood was found on the weapon. (Docket No. 1 at 6).  Petitioner also asserts, without factual support, that " [t]he people [sic] witnesses [sic] most [sic] of them testified falsely."  (Docket No. 1 at 6).

However, this claim lacks a sufficient factual basis to warrant habeas relief.  As the

17

Appellate Division noted, "[t]he record contains no evidence that the prosecutor knowingly introduced false testimony." Encarnacion, 269 A.D.2d at 780. In fact, the medical testimony specifically discussed the lack of blood evidence found on the recovered weapon and the reasons for the absence thereof. See FN. 6. The medical evidence further established consistencies between the ice-pick's dimensions and the victim's fatal wounds. (T at 264- 269).

Additionally, Petitioner's unsupported allegation of perjury is insufficient as a matter of law. Anekwe v. Phillips, 05-CV-2184, 2007 WL 1592973, at *6 (E.D.N.Y. May 31, 2007) (habeas petitioner has initial "burden of demonstrating, by a preponderance of evidence, that the witness committed perjury, and, in determining whether perjury occurred, a court must 'weigh all the evidence of perjury before it.'" (quoting Ortega v. Duncan, 333 F.3d 102, 106-07 (2d Cir.2003)).

Accordingly, Petitioner's argument with respect to this claim is based on conclusory assertions for which habeas relief cannot be granted and the claim should therefore be DISMISSED.

### 4.    Ineffective Assistance of Trial Counsel

Petitioner's fourth claim alleges that his trial counsel was unconstitutionally ineffective. Petitioner asserts that his trial counsel was ineffective for failing to: (a) have DNA tests performed on clothing worn by Petitioner and the victim; (b) object to the prosecutor's alleged prejudicial remarks in closing; (c) object to the admission of Petitioner's clothing into evidence; (d) properly use a peremptory challenge with respect to particular jurors; (e) offer testimony and properly interview certain witnesses; (e) explore

18

potentially exculpatory evidence; and (f)  secure a blood sample of Petitioner for DNA tests.  (Docket No. 1 at 6).

To prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test.  First, the petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.

Second, the petitioner must show that counsel's deficient performance prejudiced him. Id. at 694.  To establish the "prejudice" prong of the Strickland test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694.  The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to  . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

On direct appeal, the Appellate Division denied Petitioner's ineffective assistance of counsel claim, finding that Petitioner "received meaningful representation." 703 N.Y.S. 2d at 412.  For the following reasons, this Court finds that Petitioner has failed to demonstrate that the Appellate Division's decision in this regard was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable

19

determination of the facts in light of the evidence presented in the State court proceeding.

### a. DNA Testing

With respect to the decision not to perform DNA testing on the blood-stained clothing, given the evidence presented at trial, counsel could reasonably have believed that such testing would have revealed evidence adverse to Petitioner. For example, Petitioner has never presented any plausible argument that the victim sustained his fatal injuries at the hands of another.  As such, counsel's strategic choice not to obtain DNA testing does not constitute ineffective assistance of counsel. See Sturdivant v. Barkley, No. 04-CV-5659, 2007 WL 2126093, at *7 (E.D.N.Y. July 24, 2007) (finding that "defense counsel's strategic decision not to seek DNA testing on the bags of cocaine was both reasonable and proper given that it was likely that the testing would have revealed adverse evidence"); cf. also Johnson v. People of State of New York , 02-CV-3752, 2003 WL 23198785, at *15 (E.D.N.Y. Nov. 5, 2003) ("The record is devoid of any request by defense counsel for additional forensic testing or claim of prejudice on the ground that no further examinations were done. Strategically this position made sense since it was likely that testing would have revealed adverse evidence.").

### b. Lack of Objection to Summation Statement

With respect to the lack of an objection to the prosecutor's "judge, jury, executioner" comment during summation, it is likely that such an objection would have been overruled, for the reasons set forth above with respect to Petitioner's prosecutorial misconduct claim. Specifically, although the rhetoric expressed in the statement may have been somewhat excessive, the trial court likely would have concluded that it fell within "broad range of

rhetorical comments allowed in closing arguments." <u>Jones</u>, 250 F. Supp. at 237. In any event, as noted above, the lack of an objection was not prejudicial as the prosecutor's remark was brief and isolated and the evidence against Petitioner was strong. <u>See</u> <u>United States v. Mitchell</u>, 328 F.3d 77, 84 (2d Cir. 2003) (holding that strong evidence of guilt is sufficient to outweigh arguable prejudice arising from prosecutor's brief and isolated remarks).

### c.    Admission of Petitioner's Clothing

Petitioner also suggests that defense counsel should have objected to the admission into evidence of Petitioner's bloody clothing.  Specifically, Petitioner claims that the clothing should not have been admitted without DNA testing to determine the source of the blood.  However, for the reasons stated above, counsel's decision not to insist on DNA testing was a reasonable strategic choice, given the likelihood that the testing would have produced incriminating evidence.  Moreover, Petitioner fails to articulate any basis upon which his trial counsel could have raised a successful objection to the admission of the clothing into evidence.

### d.    Jury Selection

Petitioner further contends that trial counsel should have used peremptory challenges to strike two jurors.  Although Petitioner alleges that two of the jurors made statements during *voir dire* that, if true, would arguably have indicated possible bias, Petitioner does not provide an evidentiary record to support his claims regarding the jurors' statements.[9]

---

[9]It appears, based upon the record provided to this Court, that the jury selection proceedings were never reduced to a written transcript.

In any event, the decision not to seek the removal of the potential jurors through the exercise of a peremptory challenge is generally a strategic choice on counsel's part, which does not rise to the level of constitutional error. Tolliver v. Greiner, No. 02-CV-570, 2005 WL 2179298, at *6 (N.D.N.Y. Sep. 8, 2005) (citing Doleo v. Reynolds, No. 00-CV-7927, 2002 WL 922260, at *4 (S.D.N.Y. May 7, 2002) ("Strategies as to the exercise of peremptories are matters of counsel's intuition, and do not rise to the level of constitutional error."); Romero v. Lynaugh, 884 F.2d 871, 878 (5th Cir.1989) ("The selection of a jury is inevitably a call upon experience and intuition.... Written records give us only shadows for measuring the quality of such efforts.").

In sum, as a matter of both state and federal law regarding the evaluation of claims of ineffective assistance of trial counsel, special deference is owed to the reasonable strategic decisions made by counsel. People v. Benevento, 91 N.Y.2d 708, 712, 697 N.E.2d 584, 587, 674 N.Y.S.2d 629, 632 (N.Y.1998) ("[A] reviewing court must avoid confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. Rather, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings.... To prevail on a claim of ineffective assistance, defendants must demonstrate that they were deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice.") (internal citations, quotations and quotation marks omitted); Strickland v. Washington, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that the strategic choices of trial counsel "are virtually unchallengable" in habeas corpus proceedings).   In the present case, this Court finds that Petitioner's unsupported

22

allegations do not meet this difficult standard.  Moreover, as discussed above, given the strong evidence of guilt, any arguable error was not prejudicial to Petitioner.

### e.    Failure to Offer Testimony and Interview Witnesses

Petitioner asserts that defense counsel failed to investigate certain, unspecified "exculpatory leads" and did not properly investigate or interview potential defense witnesses.  However, Petitioner does not identify many of the potential witnesses nor state with particularity how the testimony or evidence in question would have been exculpatory.

"Such undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either Strickland prong." Polanco v. United States, Nos. 99 Civ. 5739(CSH), 94 CR. 453(CSH), 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) (citing, *inter alia*, Matura v. United States, 875 F.Supp. 235, 237 (S.D.N.Y.1995) ("Petitioner's bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably."); Lamberti v. United States, No. 95 Civ. 1557, 1998 WL 118172, *2 (S.D.N.Y. Mar. 13, 1998) (rejecting Sixth Amendment claim based on failure to investigate or communicate with petitioner as "vague and conclusory. [The allegations] do not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result. Such allegations cannot sustain a petition for habeas corpus."); United States v. Vargas, 871 F.Supp. 623, 624 (S.D.N.Y.1994) (rejecting ineffective assistance claim based on failure to investigate and failure to call character witnesses where there was "no evidence that avenues suggested by the client which might have altered the outcome were ignored" and petitioner "fail[ed] to identify what persuasive character witnesses would have been involved, or to show that counsel was

unwise in not opening up such witnesses to cross-examination"); Madarikan v. United States, No. 95 Civ.2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying ineffective assistance claim based on failure to investigate or interview witnesses where petitioner's allegations of ineffective assistance were "conclusory, and g[a]ve no indication as to what exculpatory evidence may have been revealed by an investigation"); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir.1984) (denying as merely "conclusory" ineffective assistance claim based on counsel's failure to interview witnesses where the claim was unsupported by affidavits or statements from any witness or counsel)). This claim of ineffective assistance is simply too vague and conclusory to state a proper ground for habeas relief and, as such, must be dismissed.

### f.    Blood Sample

In his final claim of ineffective assistance of trial counsel, Petitioner asserts that his attorney should have obtained blood from Petitioner and tested the same to determine the source of the blood on Petitioner's clothing.  This claim is without merit for the reasons discussed above with respect to DNA testing, namely, that counsel may reasonably have believed that any such testing was more likely to be incriminating than exculpatory.

For the foregoing reasons, Petitioner's ineffective assistance of counsel claim should be DENIED.


### 5.    Ineffective Assistance of Appellate Counsel

In his fifth claim for relief, Petitioner alleges that he was denied the effective assistance of appellate counsel.  In support of this claim, Petitioner contends that his

appellate counsel improperly failed to (a) raise an ineffective assistance of trial counsel claim on direct appeal and (b) raise a claim based upon the alleged destruction of the actual murder weapon by the prosecution prior to trial.

As noted above, to prevail on an ineffective assistance of counsel claim, Petitioner must satisfy the two-part test set forth in Strickland.  466 U.S. 668.  First, Petitioner must demonstrate that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, he must show that counsel's deficient performance prejudiced his defense.  Id. at 692.

To demonstrate prejudice, Petitioner must prove that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id. at 694. Failure to satisfy either requirement of Strickland 's test is fatal to a claim of ineffective assistance. See id. at 696. ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Although Strickland's two-pronged test was originally formulated to judge trial counsel's performance, it applies in the context of evaluating the effectiveness of appellate counsel's representation as well.  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994). To establish that appellate counsel failed to render effective assistance, a petitioner must do more than simply demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not required to raise all potentially colorable arguments. Id. (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)).

Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented. See id.

(citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

To establish the requisite level of prejudice resulting from appellate counsel's shortcomings, a petitioner must establish that there is a reasonable probability that the omitted "claim would have been successful before the [state's highest court]." Id. (quoting Claudio v. Scully, 982 F.2d 798, 803-05 (2d Cir.1992)); see also People v. La Hoz, 131 A.D.2d 154, 158 (App.Div. 1st Dept.1987) ("The burden lies with those raising the issue to rebut the presumption that counsel has been effective. The mere existence of an unraised issue will not suffice. A defendant must show that had the issue been raised a greater likelihood would exist that the judgment would have been reversed, or at least, modified. The right of appeal only guarantees review, not reversal."), appeal dism'd 70 N.Y.2d 1005 (N.Y.1988).

### a.   Failure to Raise Ineffective Assistance of Trial Counsel Claim

With respect to appellate counsel's decision not to raise an ineffective assistance of trial counsel claim on direct appeal, this decision was a reasonable strategic choice, which is not subject to habeas review.  For the reasons set forth above, Petitioner's claim of ineffective assistance of counsel lacked merit and Petitioner has not established a reasonable probability that the claim would have been successful. See Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir.1994) ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful ....' ") (alteration in original) (quoting Claudio v. Scully, 982 F.2d at 803); see also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.1994) ("[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Indeed, Petitioner raised the issue of alleged ineffective assistance of trial counsel

26

in his *pro se* supplemental brief to the Appellate Division.  The court's rejection of that claim on direct appeal provides further validation for appellate counsel's decision not to raise the claim in the first instance.  See Brunson v. Tracy, 378 F. Supp.2d 100, 113 (E.D.N.Y. 2005) ("Appellate counsel's decision was therefore simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel.").  Moreover, the fact that the Appellate Division reviewed and rejected the ineffective assistance of trial counsel demonstrates that Petitioner was not prejudiced by appellate counsel's decision not to raise the claim in the brief that he prepared.

### b.      Alleged Evidence of Destruction of "Murder Weapon"

The ice pick like weapon was not destroyed by the prosecution and was available at trial.  Rather,  Petitioner  alleges that the victim was actually killed by a small packet of marijuana that was found inside of his mouth while he was being treated for his injuries. (T at 155-56).  Petitioner asserts that appellate counsel should have raised the issue of whether the marijuana packet, which was the "real" murder weapon had been destroyed by the prosecution.  However, Petitioner's claim is without evidentiary support and is contradicted by the expert medical testimony, which established that the victim died from multiple stab wounds. (T at 264).  As such, appellate counsel's decision not to raise this non-meritorious claim did not constitute ineffective assistance of appellate counsel.

Accordingly, Petitioner's ineffective assistance of appellate counsel claim should be DENIED.

### C.      Petitioner's Motion to Amend/Correct Petition

27

Also before this Court is Petitioner's most recent Motion to Amend/Correct his Petition, which was filed on August 20, 2007 (Docket No. 53).  Petitioner's proposed Amended Petition asserts the same five claims advanced in the original Petition.

In addition, Petitioner asserts the following new grounds in support of his ineffective assistance of counsel claim: (a) trial counsel failed to establish an attorney-client relationship by visiting Petitioner and (b) counsel improperly failed to move for dismissal of the indictment based upon the prosecution's failure to provide defendant with notice of his right to testify before the grand jury.

Petitioner also asserts new grounds in support of his ineffective assistance of appellate counsel claim: (c) appellate counsel did not raise Brady and Rosario violations by the prosecution and (d) appellate counsel should have appealed the trial court's denial of the defense's motion for a mistrial following the altercation between Petitioner and his trial attorney.

By statute, a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242.  Rule 15 of the Federal Rules of Civil Procedure governs motions to amend petitions for habeas corpus. See Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir.2001); Ching v. United States, 298 F.3d 174, 180-81 (2d Cir.2002).

In the present case, because the one-year statute of limitations has long expired, any additional claims that Petitioner wishes to add will be time-barred unless they relate back to the original petition for purposes of Rule 15(c) of the Federal Rules of Civil Procedure. See Ching, 298 F.3d at 181 (2d Cir.2002) (stating that Fed.R.Civ.P. 15(c) governs the timeliness of a motion to amend submitted after § 2244(d)(1)'s statute of

limitations has expired).

Rule 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c). The "relation back" principle of Rule 15(c) applies to petitions for habeas corpus. Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 815-16 (2d Cir.2000).

"So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle v. Felix, 545 U.S. 644, 125 S.Ct. 2562, 2574, 162 L.Ed.2d 582 (2005). However, if the proposed amended habeas petition "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth" relation back is not appropriate. Id. at 648.

This Court finds that the additional grounds raised in Petitioner's proposed Amended Petition do not relate back for purposes of Rule 15(c). While the new grounds arise generally from alleged errors committed with respect to Petitioner's trial and direct appeal, the U.S. Supreme Court has rejected the argument that for purposes of relation back analysis, "the trial itself is the 'transaction' or 'occurrence' that counts" in determining whether a common core of operative facts exists. Mayle, 125 S.Ct at 2572-73.

The "essential predicate[s]" of the new grounds rely upon distinct events and circumstances  (e.g. alleged failure to visit, Brady and Rosario issues, failure to seek dismissal of indictment, failure to appeal denial of mistrial motion) that were not the subject of claims raised in the original Petition.

29

As such, relation back must be rejected because "nothing on the face of the original petition would have given Respondent fair notice of a prospective ineffective assistance claim" based upon the new grounds set forth in the proposed Amended Petition. See Porter v. Greiner, No. CV 00-6047, 2005 WL 3344828, at *10 (E.D.N.Y. Nov. 18, 2005); see also Perez v. Greiner, No. 00Civ.5505, 2004 WL 2937795, at * 3 (S.D.N.Y. Dec. 17, 2004) (holding that "because there is nothing in Perez's original habeas corpus petition which gives the respondent fair notice of the newly alleged claims [i.e., ineffective assistance of appellate counsel], it does not appear that those claims relate back to the original petition."); Brown v. Donelly, 258 F.Supp.2d 178, 183-84 (E.D.N.Y.2003) (finding that petitioner's ineffective assistance of counsel claims did not relate back to claims in original petition); Brown v. United States, No. 02 Civ. 9305, 2003 WL 22047879, at *3 (S.D.N.Y. Aug.29, 2003) ("I find it hardly likely ... that respondent had fair notice" of one form of alleged ineffectiveness based on original claim of ineffectiveness); Escobar v. Senkowski, No.02Civ.8066, 2004 WL 1698626, at *3 n. 3 (S.D.N.Y. July 28, 2004) ("There is nothing in the Petition that gives Respondent fair notice of the ineffective assistance of counsel claims now asserted, and therefore, it is doubted that the assertion of these new claims would relate back to the filing of the original Petition.").

Accordingly, this Court finds that Petitioner's Motion to Amend/Correct his Petition is DENIED.


# IV. CONCLUSION

For the reasons stated above, the Court recommends Bernabe Encarnacion's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the

Petition be dismissed.  Additionally, Petitioner's Motion to Amend/Correct his Petition is DENIED.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:     October 26, 2007

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.  Additionally, it is hereby ordered that Petitioner's Motion to Amend/Correct his Petition is DENIED.

31

**ANY OBJECTIONS** to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN**. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on de novo review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 26, 2007

_____

Victor E. Bianchini
United States Magistrate Judge